ALWES *v.* RICHHEIMER.

Opinion delivered April 4, 1932.

*Chas. D. James,* for appellant.

*C. A. Fuller* and *A. J. Russell, Jr.,* for appellee.

McHANEY, J. On March 27, 1923, Herman Alwes and wife and Tillie N. Seidel, being the owners of a certain piece of property in Eureka Springs, executed and delivered to Frederick U. and Pauline C. Smith their mortgage thereon to secure their three promissory notes of $1,000 each. The first of said notes was paid, and the second and third notes were assigned by the Smiths to appellee Richheimer. The property mortgaged was known as the Commodore Theatre. Thereafter on the 24th day of May, 1923, Tillie N. Seidel, who has since married one Reinach, conveyed her interest in said property to her cotenant Alwes, and on the same day Alwes and wife executed and delivered their note to Mrs. Seidel-Reinach in the sum of $4,000, covering the unpaid purchase money, which was secured by a second mortgage on the same property. Thereafter Alwes and wife conveyed an undivided one-half interest in the same property to William C. Perry, subject to the mortgages of Richheimer and Seidel-Reinach. Thereafter on May 22, 1924, Alwes

and Perry executed and delivered to H. C. Pendergrass a third mortgage on the same real property, subject to the prior mortgages, which purported to cover all the personal property located in the theatre building. Default was made in the payment of Richheimer's indebtedness, and suit was brought to foreclose his mortgage, in which all the other parties in interest were made defendants. Mrs. Seidel-Reinach answered admitting the priority of the Richheimer mortgage and filed a cross-complaint against the other defendants praying a foreclosure of her second mortgage. In the mortgage by Alwes and wife to Seidel-Reinach, after describing the real estate, is found this clause: "It being my intention to convey the grounds upon which the Commodore Theatre now stands together with the building and appurtenances, all in the city of Eureka Springs, county and State aforesaid." And the habendum clause: "To have and to hold the same unto the said Tillie N. Seidel, her heirs and assigns, together with all and singular the appurtenances and improvements thereunto belonging." No personal property was mentioned in either the first or second mortgages.

At the time of the execution of the second mortgage there was located in the Commodore Theatre and attached to it the theatre seats, a number of electric fans, two picture machines and an electrical pipe organ weighing about a ton, drop curtains and other property used and useful in the operation of the theatre, all of which passed to Alwes under the Seidel-Reinach deed, and she prayed a foreclosure of the same property under her mortgage as fixtures, and that same be declared prior and paramount to the Pendergrass mortgage. Appellants Alwes and Perry answered denying the right of Mrs. Seidel-Reinach to a foreclosure on the fixtures. Pendergrass failed to answer either the complaint or the cross-complaint. On a hearing there was no dispute as to the amount due under the first and second mortgages or their priority as to the real estate. The court found for appellees, decreed a foreclosure of the first and sec-

ond mortgages for the sums agreed to be due, ordered a sale of the property, including the fixtures, and that the proceeds of the sale be applied to the payment of the first and second mortgages and the overplus, if any, be applied on the third mortgage of Pendergrass.

The only question presented by this appeal is whether the articles of furniture and fixtures in the Commodore Theatre are fixtures, and therefore a part of the realty, covered by the first and second mortgages, or whether they remain personal property and not covered by said mortgages. The word "appurtenances" is defined in Words and Phrases as follows: "An appurtenance is a thing belonging to another thing as principal and which passes as incident to the principal thing." The thing conveyed in the Reinach mortgage was the real estate described therein together with "the appurtenances and improvements thereunto belonging." As stated above, the property in the Commodore Theatre was attached to it, was appurtenant thereto and was a part of the improvements in the building for the purpose for which it was constructed. The building was built as a theatre or moving picture show, and was suitable for such purpose and for no other without extensive alterations. This court has many times had occasion to determine when personal property becomes a fixture in a building. In *Stone* v. *Suckle,* 145 Ark. 387, 224 S. W. 735, the court held that, where deed to a hotel did not reserve the ceiling fans therein which were necessary and reasonably adapted to the use of the property for hotel purposes, the jury's verdict finding them to be fixtures should be sustained. It was there held that, as between heir and executor, "the rule obtains the most rigor in favor of the inheritance, and against the right to consider as a personal chattel anything which has been affixed to the freehold." And it further said: "The strict rule as to fixtures that applies between heir and executor applies equally between vendor and vendee, and mortgagor and mortgagee." Citing 2 Kent's Commen-

taries (14 ed. p. 346). In that case the court quoted with approval from *Canning* v. *Owen*, 22 R. I. 642, 48 Atl. 1033, 84 Am. St. Rep. 858, which held that electric light fixtures which take the place of gas fixtures in a building, though removable without physical injury to the building, as between mortgagor and mortgagee, were fixtures and a part of the realty, and stated the following: "It is not necessary to impose upon a chattel the character of a fixture that it be so affixed to the realty that it cannot be removed without physical injury thereto, if it has been attached with a view of enhancing the value of the realty and for the purpose of being permanently used in connection therewith. The intention of the owner need not be expressed in words, but must ordinarily be inferred from the nature of the articles affixed, the relation and situation of the parties interested, the policy of the law with respect thereto, the mode of annexation and the purpose for which it was made. The question whether chattels are to be regarded as fixtures depends less upon the measure of their annexation than upon their own nature, and their adaptation to the purpose for which they are used."

A number of cases since that time have followed *Stone* v. *Suckle, supra.* In *Hall* v. *Burns,* 146 Ark. 157, 225 S. W. 227, a kitchen cabinet was held to be a fixture. In *Arkansas Cold Storage & Ice Co.* v. *Fulbright,* 171 Ark. 552, 285 S. W. 12; *Anderson* v. *Southern Realty Co.,* 176 Ark. 752, 4 S. W. (2d) 27, and *McGregor* v. *Cain,* 180 Ark. 746, 22 S. W. (2d) 393, the strict rule which obtains between heir and executor, vendor and vendee and mortgagor and mortgagee was relaxed because those relationships did not obtain and other circumstances and conditions relaxed the rule. *Stone* v. *Suckle, supra,* is cited in 62 A. L. R. 251, where it is stated that the tendency of modern decisions, both English and American, "is against the common-law doctrine that the mode of annexation is the criterion, whether slight and temporary, or immovable and permanent, and in favor of

declaring all things to be fixtures which are attached to the realty with a view to the purposes for which it is held or employed.''

Applying these principles we think the articles enumerated above are fixtures because not only are they attached to the building, but are used and are useful in connection with the operation of the building as a theatre or moving picture show, the only purpose to which it is adapted.

We therefore agree with the trial court that said articles, after being placed in the theatre building and attached thereto, become fixtures, lost their identity as chattels and passed under the first and second mortgages without special enumeration and were subject to foreclosure and sale as a part of the realty.

Affirmed.

KIRBY, J., dissents.