DePRIEST *v.* PEIKERT.

4-8130                                        200 S. W. 2d 804

Opinion delivered April 7, 1947.

W. F. Reeves, for appellant.

Wm. T. Mills and N. J. Henley, for appellee.

ROBINS, J. Appellant leased a small tract on U. S. Highway 65, on the south side of Buffalo River, to appellees for a term of five years. The lease provided that "all improvements on the buildings, or lands" made by lessees "shall become a part of the realty and remain on the lands." Situated on the leased tract were three cabins and a large building used for a store and for preparing and serving food. On taking possession appellees rebuilt the kitchen and did considerable repair work on the buildings. They bought and installed a butane gas system which consisted of a tank buried five feet deep in the ground and metal pipes laid 18 inches underground leading therefrom. These pipes enter the buildings through holes bored in the walls. The water system installed by appellees consisted of a jet pump, operated by electric motor, with pressure tank, all set on a concrete slab and held by bolts imbedded in the slab. From the pressure tank water is conducted into the different buildings through pipes which are laid from 8 to 12 inches deep.

This suit was brought by appellant, lessor, about ten months after the lease was executed, to cancel the lease on the ground that its provisions had been breached by appellees in several particulars. After the filing of her complaint, appellant asked for and obtained a temporary restraining order to prevent appellees from removing the heating plant and the waterworks system. Appellees, though denying any breach of the lease, averred that they were willing for same to be canceled, but they joined issue on the question of their right to remove the gas and water systems. On trial the lower court canceled the lease, but decreed that appellees might remove the water and gas

systems which it held were trade fixtures. This appeal followed.

Appellees testified that it was necessary, in order to operate the tourist camp, to install water and gas systems, and that they did not intend for same to become part of the realty.

These parties reduced their agreement to writing, and, if the terms of the written contract cover the matter in dispute, same must control the controversy. *Bache, Receiver,* v. *Central Coal & Coke Company,* 127 Ark. 397, 192 S. W. 225, Ann. Cas. 1918E, 198.

Here, appellant and appellees agreed in the lease that all "improvements" on buildings or land, made by appellees, should "become a part of the realty and remain on the lands at the end of the lease."

The exact question posed by this appeal—whether property of the kind in dispute here may be classified as improvement to land or buildings—has not been heretofore decided by this court, though somewhat similar questions have frequently been before us. Some of these cases are cited below.

In *Greenwood* v. *Maddox,* 27 Ark. 648, a portable engine placed on land for motive power for a gin was held not to be an "improvement" within the meaning of a constitutional provision for homestead exemptions.

We held in *O'Neill* v. *Lyric Amusement Company,* 119 Ark. 454, 178 S. W. 406, that electric lighting wires and fixtures in a theater constituted an "improvement" within the meaning of the mechanic's lien law.

In the case of *Waldo Fertilizer Works* v. *Dickens,* 206 Ark. 747, 177 S. W. 2d 398, we were asked to decide whether a wagon scales apparatus, consisting of a platform mounted over a concrete lined pit, with a rod running into a house through a small hole in the floor, became a part of the realty so as to pass to the purchaser of the realty as against one who held an unrecorded agreement from the owner authorizing removal of the

scales. We held in that case that the purchaser of the realty took title also to the scales apparatus; and we called attention to the fact that removal of the scales would leave an unsightly and potentially dangerous hole on the premises, and that removal of the rod would leave a hole in the floor of the house. In that case we cited our decision in *Dent* v. *Bowers,* 166 Ark. 418, 265 S. W. 636, where we held that the purchaser of a "filling station" took title to the underground gasoline tank and pump, as against one who had previously obtained from the owner a bill of sale for these articles.

Questions similar to those involved here were considered by us in the case of *Evans* v. *Argenta Building & Loan Association,* 180 Ark. 654, 22 S. W. 2d 377. In that case, a plumbing company sought to remove water fixtures placed by.it in a mortgaged building under a contract, with one in possession of the property under contract to purchase, by which it was agreed that these fixtures until they were paid for should remain the property of the plumbing company. The purchase money of these fixtures not having been paid and suit having been brought by the loan company to foreclose a mortgage on the building, the plumbing company intervened and asked leave to remove the fixtures. Dealing with this phase of the matter, we said: "Here the testimony shows that, under the conditional sale whereby the title was reserved, the company installed certain lines of pipe by which pure water might be furnished and sewerage connections afforded, and there was also put in place in the bathroom a 'closet combination, consisting of bowl, tank and seat.' The testimony is to the effect that these articles were attached to the floor and walls with screws, and might be removed without material damage to the building or the premises; but the testimony also shows that to remove the pipe would leave holes in the floor and walls of the building, and would require the excavation of the premises adjacent to the house, as the pipe had been placed in the ground. This latter work would disfigure the building and damage it, as well as the ground adjacent to it, and the right to remove the pipe does not exist. We

perceive no reason, however, why the closet combination, consisting of the bowl, tank and seat, may not be removed, as their removal will cause no material damage to the property.''

In the case at bar the water pipes and gas pipes, as well as the gas tank, have been laid underground, and the pipes have been conducted into the buildings through small holes. To take up the pipes and gas tank would necessitate digging up of soil covering them. The removal of the pipes from the buildings would inevitably inflict some damage on these structures.

We conclude that, as to the water and gas distribution lines and the gas tank, these articles were so affixed to the real estate as to become ''improvements'' within the meaning of this word as used in the lease; and that appellees therefore do not have the right to remove same.

A different situation as to the water pump, motor and water tank is shown. This machinery is fastened by bolts to a concrete foundation and may be removed readily and without any damage to the realty. It did not under the circumstances shown become an improvement to a building or to the land as the terms were used in the contract.

It follows that the decree of the lower court is reversed and the cause remanded with directions to enjoin appellees from removing any water and gas pipes and also the gas tank, but appellees to be given permission, within a reasonable time, to remove the water pump, motor and water tank; and each side to pay one-half of the costs of both courts.

MILLWEE, J., not participating.